Parker C. J.
delivered the opinion of the Court. Wheth er the bill of revivor which has been presented in this case can be sustained or not, depends upon the true construction of St. 1798, c. 77 ;[2] for we do not perceive that any additional authority is given to this Court, as a court of equity, on the subject of redeeming mortgages, by any of the several statutes which have been passed in relation to the chancery jurisdiction of this Court.
Nothing can be more reasonable or just, than that when a person entitled to redeem his mortgaged estate, has performed all which by the above statute' is required, to revest himself in the estate, and has commenced his process in order to obtain restitution, but dies before a decree upon his process has been passed, his legal representatives should be allowed to carry on the process to its consummation, instead of losing their inheritance, which, without such right, they are liable to, in case the time of redemption should expire before the death of their ancestor, or so soon after as that a new process founded upon a new tender would be nugatory. And this is likely to happen in many instances, if the mortgager himself should delay his performance of the condition until towards the close of the time allowed him by law to redeem. It is contrary to natural justice, as well as to a familiar maxim of law, that the act of God should cause injury to any one’s property, and such an effect ought to be prevented, if by a fair construction of the powers of the Court it can be. It was a harsh principle of the common law, by which all suits were abated by the death of the parties or one of them, and this principle has been, as to most personal actions, abolished. Thus, in personal actions, where the duty or contract survives, the remedy *147 already begun survives, and may be continued by executors and administrators. There is no difficulty, and there would be the same justice, in applying a like legislative provision to real actions, allowing such amendments as would comport with the actual state of the title. But no such provision having been made, the common law is undoubtedly still in force.
But there is no occasion for applying it to processes in equity, which as to their form and effect are not governed by the rules of the common law. Now the relief of a mortgager, having performed or offered to perform the condition by which the estate, according to the contract, is to be restored, after condition broken, when the estate of the mortgagee has become absolute at law, is altogether a matter in equity, as to the form in which his remedy is to be sought. The jurisdiction is given to this Court to be exercised on a bill in equity, which is to be proceeded on and determined according to the principles of equity, and judgment is to be rendered for what in equity and good conscience shall be found due. This general authority over the subject of mortgages must include a power to use all the means which are necessary and which have been usual in courts of equity, to ascertain the just rights of the parties, not by the common rules of law in relation to evidence and process, but by such rules as have been practised upon by tribunals specially intrusted with the administration of equity power. The power to examine the parties on oath, and to summon in those who may be affected by the decree, may be considered among the necessary incidents of this equity jurisdiction. So where an important fact should be contested and a verdict of a jury be desirable, in conformity with the practice of courts of chancery, an issue may be directed by the Court to determine such fact. Pomeroy v. Winship, 12 Mass. R. 514.
The case of a bill in equity then for the redemption of a mortgage being entirely within the jurisdiction of a court of chancery, or equity jurisdiction, there seems to be a propriety in adopting such of the principles, and so much of the practice of those courts, as will aid the just determination of such suits;[1] and there is no necessity, because by the common *148 law, suits will be lost by the death of the plaintiff or defendant, that the same inconvenient rule should be applied to this pro cess, especially when, as has been seen, gross and palpable injustice may be the consequence. Upon general principles, therefore, we should think that in case of such death the suit may be revived by the immediate representatives ; and nothing but some decision of this Court to the contrary would justify us in refusing to support it. The only case to be found in our books which has any relation to this question, is that which is cited from 9 Mass. R. 422. But that case did not present the question in the form in which this one does. It was determined that the death of a plaintiff in equity abated the suit. That was undoubtedly correct as the case there stood; the case was abated, as it is here, and the heirs could not be admitted on motion, as in personal actions, nor can they be in this suit. But the true question is, whether they may not by a new suit, founded on rhe rights existing in their ancestor, avail themselves of the proceedings in the former suit, and we certainly think they may without any infringement of principle, or injury to the rights and interests of the defendant; and we think, that without this privilege, there is no remedy whatever for a grievous wrong which mortgagees in possession may be enabled to commit, by the providential removal by death of the party with whom they were in contest.
Demurrer overruled,[2]

 See Revised Stat. c. 107, § 13; c. 81, § 8.

 See Saunders v. Frost, 5 Pick. 268.

 See Saunders v. Fros, 5 Pick. 271; Cooper’s Eq. Pl. 63 et seq.